# In the United States Court of Federal Claims

No. 08-889T
No. 09-55T
(Filed: April 16, 2010)

```
* * * * * * * * * * * * * * * * * * * * * * *
                                            *
PAM SCHULTZ,                                *
        Plaintiff,                          *
                                            *
v.                                          *
                                            *
THE UNITED STATES,                          *
        Defendant.                          *
                                            *
* * * * * * * * * * * * * * * * * * * * * * *

* * * * * * * * * * * * * * * * * * * * * * *
                                            *
KELLI SILVER, as Personal                   *
Representative of the Estate of             *
Bill W. Parsons,                            *
        Plaintiff,                          *
                                            *
v.                                          *
                                            *
THE UNITED STATES,                          *
        Defendant.                          *
                                            *
* * * * * * * * * * * * * * * * * * * * * * *
```

**Internal Revenue Code §§ 165(a), 6511(d), 7422; tax refund suit; statute of limitations; evidentiary hearing; jurisdiction**.

Michael P. Marsalese, The Marsalese Law Group, PLLC, 21415 Civic Center Drive, Suite 250, Southfield, MI, for Plaintiffs.

Frederick C. Crombie, U.S. Department of Justice, P.O. Box 26, Washington, D.C., for Defendant.

**MEMORANDUM OPINION
AND ORDER OF DISMISSAL**

**WILLIAMS,** Judge

In this consolidated action, Plaintiffs seek a refund of income taxes they paid in 1999, on the basis of net operating loss carrybacks from losses Plaintiffs allegedly incurred in 2002. Defendant moved to dismiss the action under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") on the ground that Plaintiffs did not timely file their claims for refunds with the Internal Revenue Service ("IRS"). On January 27, 2010, the Court held an evidentiary hearing on the issue of whether Plaintiffs' claims for refund were timely filed.[1] Based upon the record established at the evidentiary hearing, Plaintiffs did not meet their burden to demonstrate that they timely filed their refund claims. As such, Plaintiffs' complaints are DISMISSED.

### **Findings of Fact Relating to Jurisdiction**[2]

In 1999, Plaintiffs Pam Schultz and Bill Parsons won the Texas lottery. Tr. 12. Plaintiffs were not married to each other. Id. Plaintiffs accepted the lottery winnings through a partnership they created known as Amarillo Financial Freedom ("Amarillo"). Tr. 12-13; DX 4; DX 6. Plaintiffs invested a portion of the winnings into two alleged investment scams, through which Plaintiffs claimed to have incurred significant losses. See generally Schultz Compl. & Parsons Compl. Plaintiffs claimed these losses on their 2002 income tax returns, and, pursuant to Internal Revenue Code section 165(a), Plaintiffs attempted to carry back the losses as a deduction against income they realized in 1999 -- the year in which they won the lottery. Shultz Compl. ¶ 65; Parsons Compl. ¶ 65. Plaintiff Schultz seeks a refund of $484,485, and Plaintiff Kelli Silver, on behalf of the estate of her father, Bill Parsons,[3] seeks a refund of $345,309.

Tobias H. Elsass is president and CEO of Fraud Recovery Group, Inc. in Columbus, Ohio. Fraud Recovery Group "assist[s] victims of investment fraud in filing for income tax refunds from particular investments that qualify under" section 165(c)(2). Tr. 9. In April 2006, Mr. Elsass assisted in the preparation of Plaintiffs' relevant tax documents, and was responsible for mailing the documents to the IRS in Austin, Texas.[4] Tr. 16.

---

[1] On October 21, 2009, the Court denied without prejudice Defendant's motion to dismiss because there was an unresolved question of fact as to when Plaintiffs filed their Forms 1040X for tax year 1999. In opposing this motion, Plaintiffs had submitted the declaration of their tax preparer, Tobias Elsass, asserting that their Forms 1040X were timely filed on April 14, 2006. Defendant argued that Plaintiffs' Forms 1040X were not filed until October 2006. Mr. Elsass was the sole witness at the evidentiary hearing held on January 27, 2010.

[2] These findings are derived from the complaints and the record developed during the January 27, 2010 evidentiary hearing.

[3] Bill Parsons died in 2002. Tr. 13.

[4] In 1995, the Supreme Court of Ohio suspended Mr. Elsass from the practice of law for six months for accepting employment when his exercise of professional judgment may have been

Mr. Elsass undertook to prepare and file Plaintiffs' refund claims in early April 2006, with the understanding that the statute of limitations would expire on Plaintiffs' refund claims on April 15th of that year. Tr. 15-16, 131-32. Mr. Elsass had Plaintiffs' case "for two months" prior to April 2006, but he "didn't do the case" during those months because Plaintiffs "were [under] contract with [Mr. Elsass' former employer]." Tr. 131.

After Mr. Elsass took Plaintiffs' case, he and Russell Kessler, a tax attorney and acquaintance of Mr. Elsass, prepared Plaintiffs' 2002 Forms 1040. Tr. 129-31. From the outset, Mr. Elsass and Mr. Kessler were faced with deciphering a "maze" of partnerships and other entities created by Plaintiffs after they won the lottery. Tr. 12, 13. Once they were able to assess Plaintiffs' situation, Mr. Kessler prepared Plaintiffs' returns. When Mr. Elsass retrieved the 2002 returns from Mr. Kessler, Mr. Elsass noticed two problems -- 1) that Mr. Kessler had not prepared Forms 1040X[5] for tax year 1999, which Mr. Elsass felt were necessary for Plaintiffs' refund claim, and 2) Mr. Kessler had only signed one of the two 2002 Forms 1040. Tr. 130, 135. As a result, Mr. Elsass had to return the unsigned 2002 Form 1040 to Mr. Kessler for his signature, during which time Mr. Elsass "lost an extra few days" waiting for Mr. Kessler's signature. Tr. 134.[6]

At this point, Mr. Elsass "was getting panicky because [he] knew [he] had to have this in" by April 15, 2006. Tr. 29, 134. Based on his prior experiences preparing refund claims, Mr. Elsass knew the IRS would not process Plaintiffs' refund claim without the 1999 Form 1040X. Tr. 81. Because Mr. Elsass did not have the necessary software to complete Plaintiffs' 1999 Forms 1040X, on or about April 10, 2006, Mr. Elsass went to Liberty Tax Service ("Liberty") in Columbus, Ohio to prepare the Forms 1040X quickly. Tr. 16, 135-36.

Mr. Elsass testified that after Liberty prepared the 1999 Forms 1040X, he shipped the forms -- both the 2002 returns and the 1999 Forms 1040X – via overnight mail to Texas for Plaintiffs' signatures. Tr. 137. Mr. Elsass then described what he characterized as the "scramble" that occurred after he received the signed copies back from Texas:

---

affected by personal or financial interests. Tr. 113-14; Def.'s Reply to Mot. to Dismiss Ex. C. In 1999, the Supreme Court of Ohio indefinitely suspended Mr. Elsass from the practice of law for, inter alia, filing a lawsuit for defamation against an individual who had filed a grievance against Mr. Elsass. Tr. 114-15; Def.'s Reply to Mot. to Dismiss Ex. A. Mr. Elsass testified that he is eligible for reinstatement to the Ohio bar, but has chosen not to seek reinstatement. Tr. 123-24.

[5] IRS Form 1040X is an Amended U.S. Individual Income Tax Return. For purposes of satisfying the limitations period to carry back a loss in § 6511, a Form 1040X "shall constitute a claim for refund." Treas. Reg. § 301.6402-3(a)(5).

[6] The copies of Plaintiffs' 2002 Forms 1040 admitted during the hearing show that Mr. Kessler signed Mr. Parsons' return on April 7, 2006, and Ms. Schultz's return on April 10, 2006. PX 5, PX 6.

> A: I get it back on the 14th, the day it was due. I'm panicking because I also have got other stuff going on. You know, at that period of time I was doing income tax preparation. I don't do any of that any more. But what happened is so I had it back. I immediately grabbed it, photoed [sic] it. [My assistant Shelly] and I are panicking getting it out, and I walked it to the post office.
>
> Q: So you did make a copy of it?
>
> A: Not of the '99.
>
> Q: Why not?
>
> A: I can't tell you that. I don't know that.
>
> Q: So you did copy some of the package?
>
> A: We copied the 2002. I'm not sure I copied them all. Shelly had worked for me at that time [for just over a month]. She started March 6th of 2006. She's got an MBA, but she'd been off work for ten years raising her children. So she was really rusty, okay, and I'm in the middle doing tax returns and all this stuff. I didn't know we didn't. Typically we will photo everything, particularly signed signatures. At this point in time, it came in, we got it packaged, I took it to the post office. I don't know what was copied and what wasn't.

Tr. 138-39.

After he "packaged" the documents, Mr. Elsass personally walked them to the post office and mailed Plaintiffs' documents in three envelopes on April 14, 2006.[7] Tr. 138. Mr. Elsass further explained that, on the day he mailed the packages -- the day before April 15, 2006 -- he was very busy with other clients' filings:

> I may have had others with me that day. I could have had a box full to the point that when we go to the IRS like now in the next two months, when we start getting – we've got I think 40,000 '06 people in scams. We'll probably do two or three hundred different filings between now that

---

[7] As originally pled, Plaintiffs alleged that Ms. Schultz filed her 1999 amended return on March 21, 2006, Schultz Compl. ¶ 65, and that Ms. Silver, on behalf on her father's estate, filed Mr. Parsons' 1999 amended return on April 7, 2006. Parsons Compl. ¶ 65. At the hearing, Plaintiffs maintained that both returns were mailed on April 14, 2006.

>they're going to lose their rights in '06. We have to make an appointment
>at the post office now because we've gotten so large. And so who knows
>how many certified mail we did that day.

Tr. 148-49.[8]

Plaintiffs entered into evidence three certified mail receipts, each of which confirmed that the sender mailed parcels from the post office in Worthington, Ohio, to the IRS in Austin, Texas on April 14, 2006. PX 1; PX 2; PX 3. Mr. Elsass testified that he retrieved these certified mail receipts from files he maintained for both Plaintiffs. Tr. 26-27. Based on the receipts' tracking numbers, Mr. Elsass testified that he could match each receipt to each Plaintiff's tax parcel. According to Mr. Elsass, the receipt with the tracking number ending in 4002 was attached to the parcel containing the Amarillo partnership's 2002 tax documents, the receipt with the tracking number ending in 4019 was attached to the parcel containing Plaintiff Parsons' tax documents, and the receipt with the tracking number ending in 4026 was attached to the parcel containing Plaintiff Schultz's tax documents. Tr. 34-35. Mr. Elsass described how he was able to remember which receipt corresponded to which of the three parcels:

>Q: What I want to understand . . . is how is it as you sit here today that you can tell us so clearly which items . . . went in which package[?]
>. . .
>A: . . . . I just know [what] I did, I don't know, I knew I did Amarillo first and Bill second and Pam third. That just seems to be the order.
>
>Q: And why is it that you know that?
>
>A: That's how I do things. I'm very methodical in the way I do things.
>….
>My father was a strict German.
>
>Q: What does that have to do with all this?
>
>A: I'm a little old fashioned. So I do probably the male before the female. That's kind of my nature. I don't mean [to be] disrespectful, ma'am, but that's just my nature.

Tr. 145-46.

Mr. Elsass testified that the two parcels he sent on behalf of Plaintiffs in their individual capacities included their 1999 Forms 1040X. However, Mr. Elsass, Ms. Schultz, and Ms. Silver retained no copies of the parcels as mailed on April 14, 2006, to the IRS. As Mr. Elsass candidly testified, he did not "know what was copied and what wasn't." Tr. 139.

---

[8] Mr. Elsass' business was only a few months old at this point. Tr. 85.

Mr. Elsass further testified that Plaintiff Schultz's parcel contained a 2002 IRS Form 1040, a Form 1045 (a request for a tentative refund that was attached to the 2002 Form 1040), a 1999 Form 1040X, and documents establishing her basis for the claimed losses. Tr. 91-92, 99. While Mr. Elsass did not testify expressly as to what he included in Plaintiff Parsons' parcel, the Court inferred from the totality of Mr. Elsass' testimony that Mr. Elssas' recollection was that both Plaintiffs' parcels included the aforementioned IRS forms, as well as basis documents.

Fraud Recovery Group sent status report letters to its customers as a means of updating their customers on the status of their refund claims. Tr. 54. Mr. Elsass sent such status report letters to Plaintiffs between July 28, 2006, and November 28, 2006. PX 11. The letters suggested that Mr. Elsass was in contact with the IRS regarding Plaintiffs' 2002 tax return intermittently between July and November 2006. In the first letter, dated July 28, 2006, Mr. Elsass noted that the IRS had received Plaintiffs' "returns" and assigned them to an "individual" for review. PX 11 at 1.

The next letters were not sent until October 2006, after Mr. Elsass called the IRS hotline, which informed him that, while the IRS had processed Plaintiffs' 2002 returns, Plaintiffs' 1999 Forms 1040X had "not shown [up in] the IRS records." Tr. 57; PX 11 at 2-3. Mr. Elsass notified Plaintiffs of this by status letters dated October 3, 2006, and October 26, 2006, and also notified Plaintiffs that the IRS "suggested" that Plaintiffs "resubmit" for "1999 tax year." PX 11 at 3-4.[9] Two more letters from Mr. Elsass to Plaintiffs -- both dated November 9, 2006 -- stated that the IRS received the recently submitted 1999 Forms 1040X,[10] and assigned them for review by the same unit that reviewed Plaintiffs' 2002 returns. PX 7-8, 11; Tr. 61-62. The final letter, dated November 28, 2006, notified Plaintiffs that the IRS had referred their refund claims to the "statute of limitations section for review . . . due to closeness to filing date deadline." PX 10-11.

No documentary evidence submitted by Plaintiffs establishes what the packages Mr. Elsass sent to the IRS in April 2006 actually contained, i.e. whether they contained Plaintiffs' 1999 Forms 1040X or not. In response to Defendant's subpoena for copies of Plaintiffs' 1999 Forms 1040X, Mr. Elsass produced from his files unsigned and undated copies of 1999 Forms 1040X. Tr. 83; PX 10, DX 19. While the forms' fields were populated with Plaintiffs' tax information, there was nothing to indicate when these forms were drafted or signed. PX 10, DX

---

[9] In the status report letter dated October 26, 2006, Mr. Elsass noted that the "agent wants me to fax him original 1999 1040X for quick processing." PX 11 at 4.

[10] The record also contains copies of a cover letter and a facsimile cover sheet, both dated October 27, 2006, that allegedly accompanied Plaintiffs' resubmitted refund claims. PX 5-6, 11. The cover letter noted that "enclosed herein [is] a 1040X for tax year 1999." The facsimile cover sheet noted that the facsimile included "a signed copy of the 1040X for 1999 as we discussed this week." Neither cover sheet made reference to a previously submitted 1040X. Nor did the cover sheets indicate that the enclosed tax forms were being "resubmitted." PX 11 at 3-4.

19. In short, the record does not contain any copy of either Plaintiff's 1999 Form 1040X – in final form or otherwise – that was signed or dated in April 2006. Other than Mr. Elsass' recollection, there is no evidence that a 1999 Form 1040X had been drafted in April 2006.[11]

According to IRS records,[12] the IRS received Plaintiffs' 2002 Forms 1040 on April 20, 2006. PX 5; PX 6; see also DX 1; DX 2 (copies of Plaintiffs' 2002 IRS Forms 4340 indicating that Plaintiffs' 2002 Forms 1040 were received on April 20, 2006). Forms 4340, "Certificates of Assessments, Payments, and Other Specified Matters," for both Plaintiffs for tax years 2002 and 1999 are in the record. The transcripts chronicle the date, type of transaction, and whether the IRS rendered any assessments or credits affecting a specified taxpayer for a specified tax year. See DX 1; DX 2; DX 10; DX 11. For example, Ms. Schultz's Form 4340 for tax year 1999 includes, inter alia, an entry indicating that she filed her 1999 return on September 25, 2000, after receiving extensions on April 15, 2000, and August 17, 2000, and another entry indicating she filed the instant lawsuit on December 30, 2008. DX 10. However, this transcript does not indicate that the IRS received her Form 1040X in April 2006.

Each of the four Forms 4340 was accompanied by a "Certificate of Official Record" upon which Kathleen Bushnell, Field Director of Submission Processing in Austin, TX, certified that each Form 4340 was a "true and complete transcript for the period stated, of all assessments, penalties, interest, abatements, credits, refunds . . . as disclosed by the records of this office." DX 1; DX 2; DX 10; DX 11 (emphasis added). The IRS also acknowledged receiving Plaintiff Parsons' 1999 Form 1045, his estate's application requesting a tentative refund, on April 14, 2006. DX 5. According to its records, the IRS did not receive Plaintiffs' 1999 Forms 1040X until Plaintiffs submitted them in late October 2006. See DX 10; DX 11; Def.'s Mot. to Dismiss at 2 (Jun. 11, 2009). The only 1999 Forms 1040X included among the IRS's records were signed by Ms. Schultz and Ms. Silver on October 22, 2006. PX 7, 8.

---

[11] In addition, Mr. Elsass testified that Liberty prepared Plaintiffs' 1999 1040X Forms on short notice in April 2006. Plaintiffs did not offer any evidence to demonstrate that Liberty actually prepared the forms in April 2006, such as an invoice from Liberty, testimony from a Liberty employee, or a bill from Mr. Elsass to Plaintiffs, including the cost of services rendered by Liberty in April 2006.

[12] In its motion to dismiss, counsel for Defendant submitted a declaration in which he affirmed that he had temporary custody of "certain" IRS files for this case, and that the tax documents he submitted in this case were true and accurate copies of Plaintiffs' IRS filings, and were retrieved from the official files of the IRS. See Mot. to Dismiss, Decl. of Frederick C. Crombie.

**Discussion**

A taxpayer who seeks a refund of erroneously collected taxes may bring an action against the government in the United States Court of Federal Claims. 28 U.S.C. § 1346(a); United States v. Clintwood Elkhorn Min. Co., 553 U.S. 1, 128 S. Ct. 1511, 1514 (2008). Section 7422 of the Code, however, provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously . . . collected . . . until a claim for refund or credit has been duly filed with the Secretary." 26 U.S.C. § 7422(a). In other words, the taxpayer must comply with the refund procedures and limitations set forth in the Code in order for the Court's jurisdiction to vest. If the Court finds that it does not have jurisdiction, it must dismiss the case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause.'") (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).

When the motion is made under RCFC 12(b)(1), the plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). To that end, the plaintiff must present "competent proof" and demonstrate affirmatively that the Court has jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936) ("If [the plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."). See also J. Cardenas & Sons Farming, Inc. v. United States, 88 Fed. Cl. 153, 157-58 (2009). When the movant challenges the truth of jurisdictional facts alleged in the complaint, the court may consider relevant evidence to resolve the factual dispute. Reynolds, 846 F.2d at 747; see also Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged.").

Section 6511 of the Code establishes the time limits within which a taxpayer must file a claim for refund with the IRS. 26 U.S.C. § 6511. The Code affixes a "special" limitations period to refund claims based on net operating loss carrybacks, stating:

> If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback . . . the period shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback.

26 U.S.C. § 6511(d)(2)(A).

The Code prescribes that tax returns based on a calendar year must be filed by April 15 of the following year, unless the taxpayer obtains an extension. 26 U.S.C. § 6072(a). Thus, for a loss that occurred in 2002, a taxpayer who did not receive an extension would have had until April 15, 2006, to file a claim for a refund attributable to a net operating loss carryback. 26 U.S.C. § 6511(d)(2)(A); Treas. Reg. § 301.6511(d)-2. A claim for refund is "duly filed" under section 7422 if a "properly executed . . . income tax return or an amended return (on 1040X . . .)"

8

is filed with the IRS prior to the expiration of limitations period under section 6511(d)(2).  Treas. Reg. § 301.6402-3(a)(5).  An amended return is "properly executed" if it "contains a statement setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer."  Id.

In this case, Plaintiffs must demonstrate, by a preponderance of the evidence, that Mr. Elsass mailed two properly executed 1999 Forms 1040X to the IRS on or before April 15, 2006.  Based on the evidentiary record, Plaintiffs failed to meet their burden.

Although Mr. Elsass testified that he remembered mailing Plaintiffs' 1999 Forms 1040X with Plaintiffs' 2002 forms on April 14, 2006, the record as a whole does not establish that Plaintiffs' 1999 Forms 1040X were, in fact, mailed on that date.  The IRS's official transcript indicates that Plaintiffs' 2002 Forms 1040 were received in April 2006, but the transcript does not show receipt of Plaintiffs' 1999 Forms 1040X at that time.  According to the IRS' Field Director of Submission Processing, these transcripts included "all . . . refunds" submitted for the 1999 tax period.  DX 10, DX 11; see also DX 1, DX 2 (Forms 4340 for tax year 2002).  Thus, any refund claims received by the IRS in April 2006 would have been listed in these transcripts.

Further, Mr. Elsass' own testimony -- almost four years after the event -- on the circumstances of his preparing and mailing these packages did not establish a methodology, business practice, or protocol from which the Court might have inferred that it was likely that the 1999 Forms 1040X were mailed on April 14, 2006.  Mr. Elsass had just recently formed a new company and was, by his own admission, overburdened on that day.  Tr. 85 ("You don't realize the scramble this was.").  Mr. Elsass could not estimate the number of other clients' tax forms filed that day, but his testimony suggests there were likely many:

> [W]e could have had a box full to the point that when we go to the IRS like now [January 2010] in the next two months, when we start getting – we've got I think 40,000 '06 people in schemes . . . and so who knows how many certified mail[ings] we did that day.

Tr. 148-49.

Moreover, Mr. Elsass' assistant had been with him for just over a month after a ten-year break from the work world, and she was, in his words, "really rusty."  He himself was "in the middle of doing tax returns and all this stuff," including going to the post office.  Tr. 138-39.  As a result, he "didn't know what was copied and what wasn't."  Tr. 139.  In short, as Mr. Elsass admitted, on April 14, 2006, he was "panicking because [he] also [had] other stuff going on."  Tr. 138.

This backdrop of confusion, along with the absence of any documentary evidence that the Parsons and Schultz parcels actually contained the 1999 Forms 1040X, that any 1999 Forms 1040X were drafted in April 2006, or that the Forms 1040X were received in April 2006 by the IRS, combine to persuade the Court that Plaintiffs have not established that they mailed the 1999 refund claims on April 14, 2006.  Thus, Plaintiffs have not established that their refund claims (i.e. Forms 1040X) were duly filed with the IRS on or before April 15, 2006.  Because filing a

timely claim for refund is a mandatory prerequisite for maintaining a tax refund suit, the Court lacks jurisdiction over these actions.  IRC §§ 6511(d)(2)(A), 7422(a); <u>McNutt</u>, 298 U.S. at 189.

## **<u>Conclusion</u>**

Accordingly, Plaintiffs' complaints are DISMISSED.

<u>s/Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**Judge**
